**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAKIESTE WELCH, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 21-10866 (JMV) (ESK) |
| v. | : | |
| | : | **OPINION** |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**VAZQUEZ, District Judge:**

Plaintiff, a federal pretrial detainee, is proceeding *pro se* with a Complaint asserting claims under various federal statutes and related state law claims. (D.E. 1.) For the reasons stated in this Opinion, the Court will dismiss with prejudice Plaintiff's claims against the United States, the United States Department of Justice, the United States Marshals Service, the United States District Court for the District of New Jersey, the claims against Chief Judge Freda Wolfson for monetary relief, and the claims against Governor Phil Murphy in his official capacity for monetary relief. The Court will dismiss the remainder of Plaintiff's federal claims without prejudice and decline to exercise supplemental jurisdiction over his state law claims.

### I. BACKGROUND

This case arises from Plaintiff's federal pretrial detention at the Essex County Correctional Facility, in Newark, New Jersey. Plaintiff sues (1) the United States of America; (2) the United States Marshals Service; (3) the United States District Court for the District of New Jersey; (4) the United States Department of Justice; (5) Chief Judge Freda Wolfson; (6) Governor Phil Murphy;

(7) Essex County; (8) Director Alfaro Ortiz; (9) Warden Guy Cirello; and (10) CFG Medical Services, as Defendants in this matter.

This Complaint is one of numerous, nearly identical complaints,[1] from pretrial detainees at the Essex County Correctional Facility, seeking to proceed as a class action. *See, e.g.*, *McClain v. United States*, No. 21-4997, 2021 WL 2224270, at *1 (D.N.J. June 2, 2021); *Middlebrooks v. United States*, No. 21-9225, 2021 WL 2224308, at *1 (D.N.J. June 2, 2021).[2]

Plaintiff, like the other detainees, lists a myriad of federal claims, but the thrust of the Complaint alleges that the Government violated his speedy trial rights through Chief Judge Wolfson's COVID-19 pandemic related standing orders. (D.E. 1, at 7–11.)  In those orders, Chief Judge Wolfson held that the pandemic warranted the exclusion of various periods of time from the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). (*See, e.g.*, Standing Order 20-02, at ¶ 6.)  Plaintiff also complains about various pandemic related restrictions at the jail such as limited visitation, religious services, discovery access, legal research time, and medical care, as well as slow mail, lockdowns, extreme quarantines, and a lack of access to attorneys. (D.E. 1, at 11.)

Plaintiff, however, offers no details on how he believes that any particular Defendant violated *his* individual rights.  Moreover, apart from Chief Judge Wolfson's standing orders, Plaintiff only alleges that Governor Murphy issued unspecified "Covid-19 emergency orders," and that Director Ortiz issued unspecified "emergency declarations," that somehow violated Plaintiff's

---

[1] In many cases, the district court dismissed the earlier versions of the complaint, for suing only the United States, which was immune under sovereign immunity. *See, e.g.*, *Marcano v. United States*, No. 21-7381, 2021 WL 2434022, at *2 (D.N.J. June 14, 2021); *Middlebrooks v. United States*, No. 1-9225, 2021 WL 1962895, at *2 (D.N.J. Apr. 15, 2021).  In some cases, like the present one, plaintiffs sought to file the amended version of the complaint, as their initial filing. (D.E. 1.)

[2] In styling the complaints as a class action, the plaintiffs in these cases have failed to include any information regarding their personal, individual circumstances.

rights. (*Id*. at 6.)  Beyond these three references, the Complaint does not specify which Defendants were involved in which violations, and simply concludes that all of the Defendants were responsible in some way.

In May of 2021, Plaintiff filed the instant Complaint.  In terms of relief, Plaintiff seeks monetary, injunctive, and declaratory relief.  In particular, he seeks to vacate unspecified pandemic related orders and declarations and requests four days of jail credit for every day in detention "during the period of March 15, 2020 to present." (*Id*. at 23–24.)

## II.   STANDARD OF REVIEW

District courts must review complaints in civil actions in which a prisoner files suit against "a governmental entity or officer or employee of a governmental entity," and in actions where the plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a).  District courts must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2).  When considering a dismissal for failure to state a claim on which relief can be granted, courts apply the same standard of review as that for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6).  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).

Consequently, to survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

In addition to these pleading rules, a complaint must satisfy Federal Rule of Civil Procedure 8(a), which states that a complaint must contain:

> (a) A pleading that states a claim for relief must contain[:] (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

"Thus, a *pro se* plaintiff's well-pleaded complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a 'short and plain' statement of a cause of action." *Johnson v. Koehler*, No. 18-00807, 2019 WL 1231679, at *3 (M.D. Pa. Mar. 15, 2019).

## III.   DISCUSSION

Plaintiff brings this action pursuant to (1) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); (2) the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq*.; (3) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), (d); (4) the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq*.; (5) the Religious Land Use and Institutionalized Persons Act, 42. U.S.C. § 2000cc *et seq*.; (6) 42 U.S.C. §§ 1983, 1985, 1986;  and (7) the Administrative Procedures Act, 5 U.S.C. § 702. (D.E. 1, at 1.) The Court will first address the issue of immunity, as it appears from the face of the Complaint that Plaintiff has sued a number of Defendants that are immune from suit.

4

A. **Immune Defendants**

The Third Circuit ruled in *Jaffee v. United States*, 592 F.2d 712, 717–18 (3d Cir. 1979), that sovereign immunity bars claims against the United States and its federal agencies and officials, unless the United States explicitly waives its immunity. *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001); *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008); *Belt v. Fed. Bureau of Prisons*, 336 F. Supp. 3d 428, 436 (D.N.J. 2018). Stated differently, "the United States is not subject to suit for constitutional torts, including the civil rights claims Plaintiff seeks to raise, and is entitled to absolute sovereign immunity in this matter." *See, e.g.*, *Edward Pittman, v. United States*, No. 21-10123, 2021 WL 2260518, at *2 (D.N.J. June 2, 2021) (footnote omitted). Similarly, federal agencies and entities, like the United States Department of Justice, the United States Marshals Service, and the United States District Court for the District of New Jersey, are also immune from suit in civil rights matters, because they have not explicitly waived sovereign immunity. *See e.g.*, *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007); *see also Gary v. Gardner*, 445 F. App'x 466–67 (3d Cir. 2011) (holding that "the United States Marshals Service is entitled to sovereign immunity from suit" absent an explicit waiver of sovereign immunity); *Hill v. United States*, No. 21-03872, 2021 WL 3879101, at *3 (D.N.J. Aug. 30, 2021).

As to Plaintiff's state law claims, absent an explicit waiver of sovereign immunity, he cannot sue the federal government. *United States v. Dalm*, 494 U.S. 596, 608 (1990); *Kabakjian v. United States*, 267 F.3d 208, 211 (3d Cir. 2001). "Sovereign immunity not only protects the United States from liability, it deprives a court of subject matter jurisdiction over claims against the United States." *Richards v. United States*, 176 F.3d 652, 654 (3d Cir. 1999) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). Consequently, this Court lacks subject matter jurisdiction over these claims, and the Court will dismiss with prejudice Plaintiff's claims against

5

the United States, the United States Department of Justice, the United States Marshals Service, and the United States District Court for the District of New Jersey.

### 1. Claims Against Chief Judge Wolfson

Turning then to Chief Judge Wolfson, Plaintiff has sued her based on her pandemic related standing orders.  In particular, Plaintiff takes issue with Chief Judge Wolfson's decisions to exclude time under the Speedy Trial Act, in light of the pandemic.  Judges, however, are generally "immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991).  The doctrine of judicial immunity stems from "the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000).

"When a judge has acted in his or her judicial capacity, as opposed to an executive or administrative capacity, he or she is entitled to absolute judicial immunity from damage claims even when his or her action was erroneous, done maliciously, or exceeded his or her authority." *Richardson v. Wilkinsburg Police Dep't*, No. 16-0129, 2016 WL 4141084, at *4 (W.D. Pa. Aug. 4, 2016) (citing *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)).  Unlike judicial acts, however, judges are not entitled to judicial immunity for mere "administrative acts." *Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 769–70 (3d Cir. 2000); *see also Forrester v. White*, 484 U.S. 219, 229 (1988) (holding that a judge was acting in an administrative capacity, rather than his judicial capacity, in terminating a subordinate court employee).

With those principles in mind, to the extent Plaintiff argues that Chief Judge Wolfson's standing orders were administrative, rather than judicial in nature, the Court disagrees. "Those orders were clearly issued in a judicial rather than administrative capacity," at least with respect to the exclusions of time under the Speedy Trial Act. *Hill*, 2021 WL 3879101, at *3.  In those

6

orders, Chief Judge Wolfson addressed and adjudicated a legal issue before her, *i.e.*, the effect of a global pandemic on the speedy trial rights of the pretrial detainees in this District.  Accordingly, because the acts in question are plainly judicial, Chief Judge Wolfson is entitled to absolute immunity from Plaintiff's claims for monetary damages.

Chief Judge Wolfson is similarly entitled to judicial immunity with respect to Plaintiff's requests for injunctive relief.   In 1996, Congress amended 42 U.S.C. § 1983 to state that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006).  This provision applies to both state and federal judges. *Azubuko*, 443 F.3d at 304 (citing *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000)).

Here, injunctive relief is not available against Chief Judge Wolfson because Plaintiff has not properly pleaded that she violated any declaratory decree or that declaratory relief is unavailable.  Plaintiff summarily concludes, with no further elaboration, that "[a] decree was violated[,] and declaratory relief was not made available." (D.E. 1, at 2.)   Indeed, Plaintiff expressly seeks declaratory relief in this matter. (D.E. 1, at 23.)   In addition, Plaintiff's bare conclusions are insufficient to state a claim for relief. *Kaplan v. Holder*, No. 14-1740, 2015 WL 1268203, at *4 (D.N.J. Mar. 18, 2015) (citing *Iqbal*, 556 U.S. at 678).  Consequently, Chief Judge Wolfson is entitled to judicial immunity from Plaintiff's claims for injunctive relief.

Turning now to Plaintiff's requests for declaratory relief, Plaintiff asks this Court to "declare" that Chief Judge Wolfson violated a litany of statutes and constitutional amendments. (D.E. 1, at 23.)   Declaratory judgment, however, "is inappropriate solely to adjudicate past

conduct." *Corliss v. O'Brien*, 200 F. App'x 80, 84–85 (3d Cir. 2006).  "Nor is declaratory judgment meant simply to proclaim that one party is liable to another." *Id.*

To the extent Plaintiff seeks declaratory relief to address the effect of the standing orders on him personally, *i.e.*, to prospectively protect his rights, he has not pleaded facts to support such a claim.  As discussed in greater detail in Section F, Plaintiff styled this Complaint as a class action, and offers no details regarding his personal circumstances.  In any event, as a general matter, this "Court concurs with other courts throughout the District of New Jersey and finds that Chief Judge Wolfson's standing orders, issued in response to the COVID-19 pandemic" are "supported by detailed findings, and provide[ ] a sound factual and legal basis that any delays are supported by the ends of justice, consistent with the Speedy Trial Act and the Sixth Amendment." *United States v. Hafner*, No. 19-790, 2021 WL 1873560, at *3 (D.N.J. May 10, 2021) (internal quotation marks omitted) (citing *United States v. Kaetz*, 2021 WL 37925, at *8 n.8 (D.N.J. Jan. 4, 2021); *Chu*, 2021 WL 879905, at *4).

Chief Judge Wolfson conducted an appropriate balancing test under the Speedy Trial Act, as set forth, for example, in Standing Order 21-04:

> [T]he Court recognizes the trial, procedural and substantive rights of criminal litigants and particularly, their right to a speedy and public trial under the Sixth Amendment (and the particular application of that right in cases involving defendants who are detained pending trial). However, the Court also recognizes the compelling public health and safety issues outlined in this Standing Order, and therefore, pursuant to 18 U.S.C. § 3161 (h)(7)(A), finds that the ends of justice served by taking such action materially outweigh the best interests of the public and the parties in a speedy trial. Accordingly, the Court ORDERS that the time period of March 16, 2020 through June 1, 2021 shall be "excluded time" under the Speedy Trial Act. Having considered the factors outlined in 18 U.S.C. § 3161(h)(7)(B), the Court finds specifically, that the failure to grant such continuance would be likely to make a continuation of proceedings impossible, or result in a miscarriage of justice. Such exclusion is necessary to assure that in cases going to trial, there is

> a full, unhindered, continuously serving jury venire and seated jury in every case, which is central to the sound administration of justice. Such exclusion of time is also necessary in cases not yet set for trial in order to address the reasonably anticipated difficulties in defense counsel communicating or visiting with clients (including those detained in locales and facilities under a declared state of emergency), and the inherent delay in the scheduling of further trials as a consequence of the exclusion period herein. The Court may by further Order or Extension extend the period of exclusion as circumstances may warrant, and the assigned judicial officer may, by Order, also do so in connection with any specific proceeding.

As a result, the "Chief Judge specifically acknowledged the importance of the right to a speedy and public trial and balanced the interests of defendants and the public in that right against the compelling public health and safety issues arising out of the COVID-19 pandemic." *Hafner*, 2021 WL 1873560, at *3; *Chu*, 2021 WL 879905, at *3.  Ultimately, however, without information specific to Plaintiff's individual circumstances, the Complaint fails to state a claim for declaratory relief regarding his speedy trial rights.

For all of those reasons, the Court will dismiss with prejudice Plaintiff's claims against Chief Judge Wolfson for monetary relief and dismiss without prejudice his claims against her for injunctive and declaratory relief.

### 2. Claims for Monetary Relief Against Governor Murphy

Next, to the extent Plaintiff asserts claims for monetary relief against Governor Murphy in his official capacity, the Court will dismiss those claims with prejudice.  Sovereign immunity under the Eleventh Amendment renders "states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *E.g.*, *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).  Accordingly, New Jersey state agencies "established in the Executive Branch of State Government" are entitled to Eleventh Amendment sovereign immunity,

"regardless of the relief sought," unless an exception to the rule applies. *See Rhett v. Evans*, 576 F. App'x 85, 88 (3d Cir. 2014) (internal quotation marks omitted).  Those exceptions apply when (1) Congress abrogates the immunity; (2) a state waives immunity; or (3) when a plaintiff sues individual state officers for prospective relief to end an ongoing violation of federal law. *See MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001).

Here, Governor Murphy is a state official, and Plaintiff has sued him in his official capacity. (D.E. 1, at 3.)  Consequently, he is entitled to sovereign immunity from Plaintiff's claims for monetary damages, and the Court will dismiss those claims with prejudice. *Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019).

## B.  Federal Tort Claims Act

As to Plaintiff's Federal Tort Claims Act ("FTCA") claim against the United States, the "FTCA operates as a limited waiver of the United States's sovereign immunity." *White–Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (citation omitted).  Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  An incarcerated FTCA plaintiff may sue only the United States, may seek only monetary damages, and may not recover for mental or emotional damages in the absence of physical injury. *See* 28 U.S.C. § 1346(b)(1)–(2); *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA.").

A plaintiff suing under the FTCA must present the offending agency with notice of the claim, including a "sum certain" demand for monetary damages. *See White–Squire*, 592 F.3d at 457.  "Because the requirements of presentation and a demand for a sum certain are among the terms defining the United States'[] consent to be sued, they are jurisdictional." *Id*.  An agency's

10

final denial of the tort claim is a jurisdictional requirement. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). These requirements cannot be waived. *See, e.g.*, *White–Squire*, 592 F.3d at 457. In other words, if a plaintiff has not complied with the FTCA's pleading requirements, "a district court has no subject matter jurisdiction over the claim." *Hardie v. United States*, 501 F. Supp. 3d 152, 158 (E.D.N.Y. 2020), *aff'd*, No. 21-106, 2021 WL 4427852 (2d Cir. Sept. 27, 2021); *see also Washington v. Thomas*, No. 16-0992, 2017 WL 36272, at *3 n.3 (D.N.J. Jan. 4, 2017); *Hoffenberg v. United States*, No. 10-2788, 2012 WL 379934, at *4 (D.N.J. Feb. 6, 2012).

In the present case, the Complaint fails to make any reference to a notice of tort claim, a demand for sum certain, or that Plaintiff has otherwise exhausted his FTCA claim. Accordingly, the Court will dismiss without prejudice Plaintiff's FTCA claim against the United States "for failure to sufficiently allege the jurisdictional basis" for his claim. *Hoffenberg*, 2012 WL 379934, at *4.

## C. Racketeer Influenced and Corrupt Organizations Act Claims

Next, Plaintiff broadly claims that all of the Defendants are liable under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d). (D.E. 1, at 19.) Under that Act, § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010). On the other hand, Section 1962(d) makes it unlawful "for any person to conspire to violate § 1962(c)." *Id.* (internal quotation marks omitted). "To plead a RICO claim under § 1962(c), 'the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Id.* (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004)). An "enterprise" includes "any

individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Meanwhile, a "'pattern of racketeering activity' requires at least two acts of racketeering activity" as set forth in § 1961(a), within a ten-year period. 18 U.S.C. § 1961(5).

In the present case, Plaintiff fails to sufficiently plead the elements of a RICO claim.  The Complaint only alleges that "defendants . . . acted as a criminal enterprise that is run as a business with a pattern of illicit conduct exceeding two predicate acts that equate[] to fraud, corruption, violence, and activity in furtherance of human trafficking and slavery." (D.E. 1, at 19.)  Plaintiff fails to elaborate on how he believes Defendants formed an enterprise, what conduct he specifically believes violated RICO, and what predicates acts he believes were racketeering activities. (*Id*.)

Additionally, Plaintiff failed to plead cognizable RICO losses.  Plaintiffs may only use a civil RICO claim "to recover 'concrete financial loss' in the form of an injury to property or business, personal injury or emotional harm are not proper bases for a RICO claim." *Cabbagestalk v. United States*, No. 21-4902, 2021 WL 2260517, at *1–4 (D.N.J. June 3, 2021) (quoting *Parness v. Christie*, No. 15-3505, 2015 WL 4997430, at *6-8 (D.N.J. August 19, 2015)); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).  In this case, all of Plaintiff's claims stem from constitutional violations which caused personal injuries, which are not proper RICO losses.

Yet, even if Plaintiff had pleaded proper losses, his bare conclusions are insufficient to state a claim for relief. *Kaplan*, 2015 WL 1268203, at *4 (citing *Iqbal*, 556 U.S. at 678).  He cannot rely on "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported merely by conclusory statements." *Iqbal*, 556 U.S. at 678. Accordingly, the Court will dismiss Plaintiff's RICO claims without prejudice for failure to state a claim.

### D.  Religious Claims

The Court next turns to Plaintiff's claims under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42. U.S.C. § 2000cc *et seq.*  The RFRA "prohibits the Federal Government from taking any action that substantially burdens the exercise of religion unless that action constitutes the least restrictive means of serving a compelling government interest." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 690–91 (2014).  RLUIPA, among other things, "allows prisoners 'to seek religious accommodations pursuant to the same standard as set forth in RFRA." *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting *Gonzales v. O Centro Espírita Beneficente Uniõ do Vegetal*, 546 U.S. 418, 436 (2006)).

The "same standards apply in RFRA and RLUIPA cases," but RLUIPA applies "on a more limited category of governmental actions." *Watson v. Christo*, 837 F. App'x 877, 881 n.6 (3d Cir. 2020) (quoting *Burwell*, 573 U.S. at 695).  Consequently, to state a claim under either statute, "Plaintiff must allege facts that indicate that the federal government substantially burdened a sincerely held religious belief." *See, e.g., Martinez v. United States*, No. 21-4336, 2021 WL 2224268, at *4 (D.N.J. June 2, 2021) (citing *Holt*, 574 U.S. at 360–61); *Gambino v. Cassano*, No. 17-0830, 2021 WL 1186794, at *5 (D.N.J. Mar. 30, 2021).  A substantial burden exists where

> 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington v. Klem*, 497 F.3d 272, 277–78 (3d Cir. 2007).

In the instant case, Plaintiff fails to plead any facts regarding *his* personal religious beliefs or tenets. (D.E. 1, at 36–39.)  Plaintiff merely alleges that pandemic restrictions have generally

hindered certain religious practices at the facility. (*Id.*)  Without specific allegations as to his personal religious beliefs, the Complaint in its current form fails to state a claim.   Consequently, the Court will dismiss without prejudice Plaintiff's RLUIPA and RFRA claims.

### E.  Supervisory Liability

Next, it appears that Plaintiff wishes to pursue supervisory liability claims against Governor Murphy, Director Ortiz, and Warden Cirillo.  As a general rule, however, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. See Iqbal*, 556 U.S. at 676; *Monell v. New York City Dept. Of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel*, 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

In general, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates.  First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).  A policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [the governing] body's officers." *Monell*, 436 U.S. at 690.  A custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id*. at 691.  A plaintiff "must identify a custom or policy . . . and specify what exactly that custom or policy was" to satisfy the

pleading standard. *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013) (noting that although this standard typically applies to municipal entities, it "applies with equal force to supervisory liability claims premised on a 'policy, practice, or custom' theory" (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).  Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, the Complaint fails to explain how Governor Murphy, Director Ortiz, and Warden Cirillo personally violated Plaintiff's constitutional rights.  Plaintiff makes only one brief reference to unspecified policies and customs, (D.E. 1, at 23), and then alleges that all of the Defendants in this case are somehow responsible.  Plaintiff fails to describe what these policies or customs are, and how they specifically caused or contributed to his injuries, or if he had personally suffered any injuries at all.  Plaintiff styled the Complaint as a class action, and does not specify what, if any, injury is relevant to Plaintiff.  As discussed in greater detail in the following Section, Plaintiff does allege numerous claims against the Defendants collectively, but generally fails to specify the individual actions of any Defendant or the circumstances surrounding their alleged failures.

Finally, to the extent Plaintiff contends that these Defendants are liable simply for being supervisors, the Court disagrees.  Once again, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676.  In simpler terms, a supervisor is not liable for the unconstitutional conduct of their employees solely because he or she is a supervisor.

Ultimately, Plaintiff's supervisory liability claims are a collection of legal conclusions, which are insufficient to state a claim for relief. *Kaplan*, 2015 WL 1268203, at *4 (citing *Iqbal*, 556 U.S. at 678). Accordingly, the Court will dismiss without prejudice the supervisory liability claims against Governor Murphy, Director Ortiz, and Warden Cirillo.

### F.  Remaining Federal Claims

Plaintiff's remaining federal claims, his claims under 42 U.S.C. §§ 1983, 1985, 1986, and the Administrative Procedures Act, 5 U.S.C. § 702, fail to state a claim. One of the flaws in the Complaint is that it often alleges that the Defendants acted in unison, without delineating the actions of each Defendant or explaining under what circumstances they acted or failed to act. Alternatively, Plaintiff often states that someone's rights have been violated, without specifying which Defendant or Defendants committed the wrong, and then concludes that all of the Defendants were somehow responsible. (D.E. 1, at 14–17, 18–19.)

These types of allegations are known as improper group pleading. Mere "conclusory allegations against defendants as a group" that "fail[] to allege the personal involvement of any defendant" are insufficient to state a claim. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* When a plaintiff names a number of defendants in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "*which* defendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (emphasis in original). A complaint that contains "impermissibly vague group pleading" is subject to dismissal. *Id.*

Apart from Chief Judge Wolfson's standing orders discussed, Governor Murphy's unspecified orders, and Director Ortiz's unspecified declarations, Plaintiff fails to plead any specific acts as to any Defendant. (D.E. 1, at 10–19, 28–40.)   For example, throughout the Complaint, Plaintiff identifies general conditions, but he does not plead that he personally needed access to those services or that he personally suffered a deprivation. (D.E. 1, at 14–17.)   Plaintiff then concludes that all of the Defendants are somehow responsible for these general issues.   As to Governor Murphy and Director Ortiz, "Plaintiff does not identify the orders or state how they caused the specific rights violations he wishes to challenge, or specify how any decisions, policies, practices, . . . caused *him* harm." *Hill*, 2021 WL 3879101, at *4 (emphasis in original).

Plaintiff's civil conspiracy claims under 42 U.S.C. § 1985(3) and § 1986, suffer from similar deficiencies.   Plaintiff baldly alleges that all of the Defendants conspired to violate his rights, with no further elaboration.   Plaintiff  "must instead plead facts showing actual agreement between the alleged conspirators and concerted action towards the object of the conspiracy." *Cabbagestalk*, 2021 WL 2260517, at *3 (citing *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ([T]the bare allegation of an agreement is insufficient to sustain a conspiracy claim")).

Once again, Plaintiff cannot rely *solely on legal conclusions*; the Complaint must allege "sufficient factual matter" to show that his claims are facially plausible. *See Fowler*, 578 F.3d at 210.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) ("a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").   In other words, Plaintiff cannot simply conclude that Defendants committed a myriad of wrongs, without adequately explaining the factual circumstances underlying each claim.

These claims also fail to sufficiently allege what Plaintiff's claims are against each Defendant and fail to provide fair notice of the grounds on which he intends to rest his claims. Fed. R. Civ. P. 8. State differently, such claims "would not provide any meaningful opportunity for the [remaining] Defendants to decipher or answer the vague allegations levied against them." *Koehler*, 2019 WL 1231679, at *3; *see Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss without prejudice Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, 1986, and 5 U.S.C. § 702, for failure to state a claim.

Finally, as no federal claims remain in this case, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, including any claims under the New Jersey Civil Rights Act. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

### G.  Request for Jail Credits

Although the discussion above is sufficient to resolve this case, the Court will briefly address Plaintiff's request for extra jail credits. In his Complaint, Plaintiff seeks four extra jail credits for every day spent in detention during the pandemic for unspecified detainees. (D.E. 1, at 24, 29.) Detainees may not, however, use a civil rights complaint to "challenge the fact or length of [their] detention." *Pittman*, 2021 WL 2260518, at *2. Rather, detainees must raise any claim "which would impugn or otherwise overturn the fact or length of . . . detention . . . via a criminal motion or a habeas petition." *Id*. (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *Edwards v. Balisok*, 520 U.S. 641, 643–48 (1997)). As a result, the Court would dismiss Plaintiff's request for additional jail credits for that reason as well.

### IV.   CONCLUSION

For the reasons set forth above, the Court will dismiss with prejudice Plaintiff's claims against the United States, the United States Department of Justice, the United States Marshals

Service, the United States District Court for the District of New Jersey, the claims against Chief Judge Wolfson for monetary relief, and the claims against Governor Murphy in his official capacity for monetary relief.  The Court will dismiss the remainder of Plaintiff's federal claims without prejudice and decline to exercise supplemental jurisdiction over his state law claims.  An appropriate Order follows.

Dated: 10/13/21

_____
JOHN MICHAEL VAZQUEZ
United States District Judge